Dear Mayor Aucoin:
We are in receipt of your request for an Attorney General's opinion regarding the placement of an item on the election ballot for the November 5, 1996 general election.
Your request states that the Board of Trustees of the City of New Iberia adopted a resolution in November of 1995 to place on the November 5, 1996 general election ballot two amendments to the special legislative charter of the City of New Iberia, dealing with term limits. One amendment would place a limit on the term of the mayor, and the other would place a limit on the terms of the trustees, including the trustee elected at large (mayor pro tempore).
Your request seeks an opinion on the following questions:
 1. Is the procedure outlined in R.S. 33:1181 the proper procedure for amendment of the special legislative charter of the City of New Iberia?
 2. May a charter amendment under R.S. 33:1181
limiting the term of an elected office be initiated under Section 28 of the special legislative charter of the City of New Iberia?
 3. Would the language provided in Resolution 4177-95 be appropriate for the amendment dealing with the limit on the term of the trustees?
 4. Would the language provided in Resolution 4177-95 be appropriate for the amendment dealing with the limit on the term of the mayor?
 5. Is a new resolution necessary to authorize the placement of the propositions on the November 5, 1996 general election ballot?
 6. Will the placement of these propositions on the ballot need approval from the State Bond Commission?
 7. Are there other procedural or substantive requirements of which we should be aware? For example, must we obtain approval from the United States Department of Justice under the Voting Rights Act?
The City Attorney for the City of New Iberia, Mr. John Jeffrey Simon, submitted a memorandum addressing all of the above questions, which we agree with his research and conclusions. However, we will provide our written opinion herein.
Question No. 1
Our information shows that the City of New Iberia was incorporated on May 13, 1839, and has a present population of 31,828. The special legislative charter for the city originally derived from 1910 La. Acts, Act No. 187. Therefore, it is our opinion that the proper procedure for amendment of the special legislative charter of the City of New Iberia is outlined in LSA-R.S. 33:1181, which provides:
 When a municipality existing prior to July 29, 1898, and having a population of two hundred thousand or less, which has not come under the provisions of Part I of Chapter 2 of this Title, desires to amend its charter, the same may be done in this way: The municipal governing body may prepare, in writing, the desired amendments, have the same published for three weeks in a newspaper published in the municipality, if there be one, and, if none, then by posting for said time in at least three public places therein; the proposed amendments shall then be submitted to the governor, who shall submit them to the Attorney General for his opinion. If the Attorney General is of the opinion that the proposed amendments are consistent with the constitution and laws of the United States and of this state, including Part I of Chapter 2 of this Title, the Governor shall approve the proposed amendments. If, within thirty days after publication, one-tenth of the electors of the municipality protest against any proposed amendment, the Governor shall not approve the amendment protested against until it is submitted to and ratified by a majority of the electors of the municipality at an election held within sixty days after the protest has been made.
 Amendments, when approved by the Governor, shall be recorded at the expense of the municipality, in the office of the Secretary of State and upon the records of the municipal governing body, and, when so recorded, shall have the force and effect of law.
 Question No. 2
Section 28 of the special legislative charter of the city provides, in pertinent part:
 Sec. 28. Ordinances-Manner of adopting; procedure; effective date.
 The manner of adoption of ordinances by the mayor and board of trustees shall be as follows: Every ordinance shall be in writing and shall be introduced and ordered published by a yea and nay vote in one issue of the official journal of the city, during a period of ten days, and thereafter it may be adopted at any meeting. . . . If, during the time an ordinance is required to be published in full, an affidavit sworn to by at least six qualified electors of the city, declaring their bona fide intent of circulating and presenting to the mayor and board of trustees a petition for a referendum upon the ordinance . . . then the said ordinance shall not go into operation for thirty days from its said publication in full, and if during said thirty days, a petition signed by qualified electors of the city, equal in number to at least twenty per cent of the entire vote cast at the last preceding general election for city trustees, protesting against the passage of such ordinance, be presented to the mayor and board of trustees, the ordinance shall thereupon be suspended from going into operation, and it shall be the duty of the mayor and board of trustees to reconsider the ordinance; and, if same be not entirely repealed, the mayor and board of trustees shall submit the ordinance to the vote of the electors of the city at the next general municipal election, if one is to be held within three months; . . . Any ordinance or measure that the mayor and board of trustees have authority to enact may be submitted by it on its own motion to the electors for adoption or rejection by the voters in the same manner and with the same effect just above provided for an ordinance, submitted on petition.
(Emphasis added.).
Since it is our opinion that the mayor and board of trustees of the City of New Iberia have the authority to amend the charter under the provisions of R.S. 33:1181, then it is also our opinion that they may do so by way of submitting the proposal to the electors for adoption or rejection in accordance with Sec. 28 of the charter. We must note that it is our opinion that a vote of the people on the propositions is binding, and therefore, not a "straw vote" which simply polls the public's opinion on an issue. Therefore, if the people vote in favor of said propositions, the governing authority is required to submit the charter amendments to the governor for approval.
Question No. 3 and No. 4
Section 5 of the city's charter provides for all elections held under the provisions of the charter to be held in accordance with the laws in effect for the holding of primary and general elections in the State of Louisiana. Title 18 is Louisiana's Election Code. Chapter 6-B of Title 18 provides the procedure to be used for an election at which a proposition orquestion, authorized by the state constitution, by a statute of this state, or by a home rule charter, is submitted to the voters. The matter at hand is a proposition or question authorized by the city's special legislative charter; i.e. a home rule charter.
LSA-R.S. 18:1299.1 provides:
 A. The preparation of the statement of any question or proposition to be submitted to the voters at an election shall be the responsibility of the governing authority or other entity calling the election or submitting the question or proposition. The statement of the proposition shall also include a simple and unbiased concise summary in easily understood language which sets forth the substance of the proposition and shall not exceed four hundred words in length. Such summary shall be set in all capital letters and shall be placed at the beginning of the statement of the proposition.
 B. The secretary of state shall be responsible for ensuring that the statement of the proposition contains the summary as provided in Subsection A of this Section.
Therefore, it is our opinion that the responsibility of the language of the proposition is to be borne by the mayor and board of trustees; however, we nonetheless concur with the wording of the proposition as presented for our review as being appropriate for the election ballot and further note that the law requires a summary, which is not included therein.
Question No. 5
We agree with the city attorney that a new resolution is necessary to authorize the placement of the propositions on the November 5, 1996 general election ballot due to the language in Section 28 of the charter which provides for an election within three months of the proposal of an ordinance. The measure in question was proposed by the mayor and board in November of 1995, more than three months from the upcoming general election on November 5, 1996.
Question No. 6
LSA-R.S. 33:1285 provides, in pertinent part:
 B.(1)(c) The secretary of state shall not prepare or certify the ballot with respect to any election for bond, debt, or tax propositions, conducted pursuant to this Chapter, or in respect to any other election where the proposition is subject to approval by the Louisiana State Bond Commission, including but not limited to any proposition to adopt, amend, or repeal a home rule charter which is subject to such approval, until he receives certification in writing from the chairman of that commission that the commission has considered and approved the proposition.
"This Chapter" refers to Chapter 6-A on bond, debt and tax elections. The matter at hand does not fall under this chapter, as discussed above. Neither can we find any language in the city's charter which requires bond commission approval for the adoption, amendment or repeal of the charter for the City of New Iberia, nor do we find that LSA-Const. Art. VI § 22 (1974) applies, as this is not an election "required in a political subdivision under the provisions of this constitution." Therefore, it is our opinion that this matter does not require approval from the Louisiana State Bond Commission prior to placement on the election ballot.
Question No. 7
In answer to your final question, again we point out that the Election Code requires a summary of the proposition in R.S.18:1299.1. Also, you are correct in seeking approval from the United States Department of Justice under Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. Whenever a State or political subdivision, subject to the Voting Rights Act, enacts or seeks to administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, the State or political subdivision may file a declaratory judgment action in the United States District Court for the District of Columbia, or make a submission to the United States Attorney General for a determination that said qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color.
We hope that this opinion answers all of your questions. If we can be of further assistance in this matter, please contact our office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 _________________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/vlh
Date Received: August 6, 1996
Date Released:
ANGIE ROGERS LaPLACE ASSISTANT ATTORNEY GENERAL